# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 17-024-02 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DUSTY EUGENE LOUGHRIDGE (02) | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are several motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and a motion to expand the record filed by *pro se* Defendant Dusty Eugene Loughridge ("Loughridge"). *See* Record Documents 177, 197, 198, & 216. Loughridge filed several letters and replies in support of his motion for compassionate release. *See* Record Documents 179, 181, 210, 212, 215, 218, 220, 221, & 224. The Government opposes. *See* Record Documents 180 & 219. For the following reasons, Loughridge's motions for compassionate release [Record Documents 177, 197, & 216] are **DENIED**. Loughridge's motion to expand the record [Record Document 198] is **GRANTED**.

## Background

On November 30, 2016, while Loughridge was serving his term of supervised release for an unrelated conviction,[1] Drug Enforcement Administration ("DEA") agents learned that Loughridge had sold 52 grams of actual methamphetamine to Joshua Caleb Tanner ("Tanner") in rooms 139 and 141 of the Shreveport Country Inn in Bossier City,

---

[1] On April 10, 2012, Loughridge was sentenced to 63 months of imprisonment and 3 years of supervised release for a violation of 18 U.S.C. § 922(g)(1). *See* 11-CR-122, Record Document 39.

Louisiana. *See* Record Document 102-2 at 1. DEA agents later placed controlled calls to Loughridge through Tanner. *See id.* During those calls, Loughridge discussed Tanner's drug debt and arranged a meeting between Tanner and Cody James Bradberry ("Bradberry"), one of Loughridge's co-defendants, to satisfy that debt. *See id.* When Bradberry met Tanner at the designated location, Bradberry was taken into custody. *See id.*

DEA agents resumed their surveillance of rooms 139 and 141 and observed Jonathan Hall purchase methamphetamine from Jimmy E. Sollers ("Sollers") in room 141. *See id.* at 2. Agents subsequently secured a search warrant for rooms 139 and 141. *See id.* In room 139, agents recovered suspected methamphetamine and a receipt demonstrating Loughridge had rented that room. *See id.* In room 141, agents recovered suspected methamphetamine and a digital drug scale. *See id.* The agents also recovered video footage of Loughridge and Sollers renting rooms 139 and 141. *See id.* The DEA crime lab confirmed that the seized methamphetamine was actual methamphetamine. *See id.* Agents later learned that Loughridge regularly supplied Bradberry and Tanner with methamphetamine to distribute. *See id.* Loughridge provided Bradberry with methamphetamine he had obtained from Jose Meija, Jr. ("Meija"), another of Loughridge's co-defendants. *See id.* Bradberry also assisted Loughridge with breaking down and packaging the methamphetamine. *See id.*

On January 25, 2017, a federal grand jury indicted Loughridge on conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846 ("Count One"), and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §

841(a)(1) ("Count Two"). *See* Record Document 1. On July 17, 2017, Loughridge pled guilty to Count One. *See* Record Documents 100 & 102. The plea agreement attributed approximately one kilogram of actual methamphetamine to Loughridge. *See* Record Document 102-2 at 2.

On October 25, 2017, Loughridge proceeded to sentencing. *See* Record Document 148. Loughridge was subject to a mandatory minimum of ten years. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The Court calculated Loughridge's total offense level to be 33 and his criminal history category to be VI, resulting in a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 235 to 293 months.[2] *See* Record Document 151 at 1. Loughridge was sentenced to a term of imprisonment of 235 months and a term of

---

[2] While not expressly argued by Loughridge, the Court briefly addresses his eligibility for compassionate release under 18 U.S.C. § 3582(c)(2), which allows a court to reduce a term of imprisonment based on a retroactive amendment to the Guidelines. *See* 18 U.S.C. § 3582(c)(2). In Part A to Amendment 821, the United States Sentencing Commission retroactively amended U.S.S.G. § 4A1.1(e). *See* U.S.S.G. Supp. App. C, Amendment 821, Part A (Nov. 2023). Under current law, a defendant receives one status point if he "receives 7 or more points . . . " and "committed the instant offense while under any criminal justice sentence . . . ." U.S.S.G. § 4A1.1(e).

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court promulgated a two-step analysis for applying retroactive Guidelines amendments. First, the Court must "follow the Commission's instructions in § 1B1.10 to determine the [defendant's] eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted . . . ." *Id.*

Here, the inquiry ends at the determination of Loughridge's eligibility. Loughridge received two status points for committing the instant offense while on a term of supervised release. *See* Record Document 140 ¶ 47. Although Loughridge would receive one less status point under current law, his criminal history category remains a category VI—regardless of that one-point reduction. As such, Loughridge is not eligible for a reduction of sentence under Amendment 821.

3

supervised release of five years. *See* Record Document 150 at 2-3. In selecting this sentence, the Court considered the 18 U.S.C. § 3553(a) factors, including Loughridge's extensive criminal history, personal characteristics, drug use, relative culpability, and role in the conspiracy. *See* Record Document 151 at 4. The Court additionally noted that a five-year term of supervised release would "allow Probation to monitor [Loughridge's] conduct and condition after release."[3] *Id.*

On November 13, 2017, Loughridge filed a notice of appeal. *See* Record Document 162. On appeal, Loughridge challenged the Court's application of a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Loughridge's role in the conspiracy. *See United States v. Loughridge*, 741 F. App'x 234, 235 (5th Cir. 2018). The Court of Appeals for the Fifth Circuit ("Fifth Circuit") reasoned that "this Court had not erred in concluding "that Loughridge exercised a supervisor role in the drug conspiracy" because "[t]he evidence in the record indicates that Loughridge, at the very least, exercised control over . . . Bradberry . . . ." *Id.* Therefore, the Fifth Circuit affirmed this Court's judgment. *See id.*

Loughridge has subsequently filed several motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Record Documents 177, 197, & 216. Loughridge makes four primary arguments in support of relief. First, Loughridge argues

---

[3] Also on October 25, 2017, the Court conducted Loughridge's revocation hearing. *See* 11-CR-122, Record Document 53. After finding Loughridge violated the conditions of his supervised release, the Court revoked Loughridge's three-year term of supervised release ordered on April 12, 2012, and imposed a sentence of 33 months imprisonment to run concurrently with the 235-month sentence associated with 17-CR-24-02. *See* 11-CR-122, Record Documents 53 & 54.

his medical conditions, which make him susceptible to COVID-19, constitute an extraordinary and compelling circumstance. *See* Record Documents 177 & 197. Second, Loughridge argues the Court's consideration of the purity of the methamphetamine when determining his Guidelines range constitutes an extraordinary and compelling circumstance because it created a sentencing disparity. *See* Record Documents 197 & 216. Third, Loughridge argues he suffers from a sentencing disparity because the Court would have been able to deviate from the statutory minimum pursuant to 18 U.S.C. § 3553(f) (commonly referred to as the "safety valve") if he was sentenced today. *See* Record Document 179. Finally, Loughridge seems to argue that he is entitled to release because a Bureau of Prisons ("BOP") officer sexually abused him.[4] *See* Record Document 210. The Government contends that Loughridge has not established an extraordinary and compelling circumstance and that the 18 U.S.C. § 3553(a) and 18 U.S.C. § 3142(g) factors counsel against release. *See* Record Documents 180 & 219.

## Law & Analysis

### I. Exhaustion of Administrative Remedies

Historically, only the Director of the BOP could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, PL 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018 ("First Step Act"), however, a court may consider

---

[4] Loughridge filed a request for a copy of his motion for compassionate release. *See* Record Document 210. In that request, he states he has been "sexually assaulted by a Federal F.B.O.P. officer" and that "being sexually assaulted by a federal officer merits a sentence reduction." *Id.* at 1. Loughridge requested a copy of his compassionate release motion to add this claim. *See id.* He has not added this claim to any formal motion, but the Court shall consider it out of an abundance of caution.

compassionate release motions filed directly by inmates. *See* 18 U.S.C. § 3852(c)(1)(A). But before an inmate pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time the warden receives his request. *See id.*

The district court can only modify a sentence after the defendant has exhausted administrative remedies. *See id.* This mandatory language includes no exceptions, equitable or otherwise. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)) ("Mandatory exhaustion regimes brook no exceptions."). Generally, "to exhaust h[is] administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in h[is] motion." *United States v. Dodd*, No. 13-CR-182, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020).

Here, Loughridge attached a form he completed and sent to the warden requesting compassionate release because of COVID-19. *See* Record Document 177-2 at 1. Loughridge does not appear to have received a response, and that form was submitted over thirty days prior to the filing of his first motion for compassionate release. *See id.* Therefore, Loughridge has exhausted his administrative remedies as to his COVID-19 claim, and the Court can proceed to the merits.

However, Loughridge has not shown he exhausted his administrative remedies for his claims based on alleged sentencing disparities and sexual abuse. *See* Record Documents 179, 197, 210, & 216. The Court could properly forego consideration of the merits of those claims. Nevertheless, in the interests of justice and judicial efficiency, the

Court shall assume *arguendo* that Loughridge exhausted his administrative remedies and will consider the merits.

## II.     Extraordinary and Compelling Circumstances

To assist courts in determining what constitutes an extraordinary or compelling circumstance, the United States Sentencing Commission ("Sentencing Commission") provides a blueprint elucidating circumstances that may justify reducing a prison term. On November 1, 2023, the Sentencing Commission amended the Guidelines to provide additional instruction concerning compassionate release.[5] For the first time since the First Step Act was passed, the Sentencing Commission outlined specific reasons that would be considered "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A)(i). The six categories now outlined in the Guidelines are: (1) defendant's medical condition, (2) defendant's age, (3) family circumstances, (4) whether defendant has been a victim of abuse during custody, (5) other reasons, and (6) an extraordinarily long sentence. *See* U.S.S.G. § 1B1.13(b).

As discussed *supra*, Loughridge seeks relief for four reasons: (1) his medical conditions make him susceptible to COVID-19, (2) he suffers from a sentencing disparity because of the purity classification of methamphetamine in his case, (3) he suffers from a sentencing disparity because of the non-retroactive amendments to the safety valve

---

[5] Although this guidance was promulgated after Loughridge filed his first motion, the Court shall consider this guidance when determining the merits of his motions. *See United States v. Armstead*, 114 F.3d 504, 508 (5th Cir. 1997) ("Where, as in this case, evidence of the Commission's policies and goals are publicly available to the courts, we should utilize these proposed new amendments in making determinations as to 'analogous guidelines' for sentencing purposes.").

7

provision, and (4) a BOP officer sexually abused him. *See* Record Documents 177, 179, 197, 210, & 216. The Court addresses each in turn.

### A. Medical Conditions & COVID-19

Loughridge argues he is eligible for compassionate release because his medical conditions put him at risk of complications from COVID-19. *See* Record Documents 177 & 179. Prior to the November 1, 2023, Sentencing Guideline amendments, district courts evaluating claims for compassionate release based on COVID-19 were left to engage in a highly fact-intensive totality of the circumstances analysis. *See e.g.*, *United States v. Wright*, No. 16-CR-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020). But even then, it was clear to district courts that the spread of COVID-19 and the conditions of confinement, alone, were not sufficient grounds to justify a finding of extraordinary and compelling circumstances. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."). As the Fifth Circuit explained, district courts had broad discretion in evaluating COVID-19 compassionate release claims, even where a petitioner established a severe health condition that put them at serious risk of complication from COVID-19. *See id.* at 434-35. The Fifth Circuit also noted that when courts did grant compassionate release based on risk of COVID-19 complications, they "largely [did] so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Id.*

The Sentencing Commission incorporated into the Guidelines several factors that courts had considered during the COVID-19 pandemic. The Guidelines now state that

8

extraordinary and compelling circumstances exist based on the prisoner's medical condition(s) if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

Here, Loughridge has not shown he is housed in a correctional facility currently at risk of an infectious disease and/or ongoing public health emergency. The COVID-19 public health emergency expired in May 2023. *See* Press Release, HHS Secretary Xavier Becerra, Secretary, Dep't Health & Hum. Servs., Statement on End of the COVID-19 Public Health Emergency, (May 11, 2023). And, while Loughridge submits evidence of a positive COVID-19 test on July 11, 2020, *see* Record Document 177-2 at 2, he has not shown that his facility *currently* has a COVID-19 outbreak.

Additionally, Loughridge has not demonstrated how his personal health risk factors present an increased risk of severe medical complications from COVID-19 that cannot be adequately mitigated. The Court recognizes that Loughridge's multiple health conditions,[6]

---

[6] Loughridge has previously tested positive for tuberculosis exposure and has been diagnosed with, *inter alia*, high cholesterol, hyperlipidemia, hypermetropia, low vision, perforation of tympanic membrane, chronic sinusitis, gastro-esophageal reflux disease, dermatitis, plantar fascial fibromatosis, "[d]isorder of male genital organs," dental caries, hair diseases, and rhinitis. Record Document 177-2 at 4-8.

9

gender, and history of smoking may pose some risk of complications from COVID-19, but these conditions themselves are insufficient to show extraordinary and compelling medical circumstances justifying relief. Further, as the Government aptly notes, Loughridge recovered from COVID-19, and "[t]here is no indication that he has relapsed, had to be hospitalized, [or] suffers any long-term debilitating effects[7] from COVID-19." Record Document 180 at 7. Loughridge's recovery supports that the BOP was able to properly mitigate any risk presented by his medical conditions.

In sum, Loughridge fails to establish an extraordinary and compelling circumstance. The Court sympathizes with Loughridge regarding his medical conditions, but those conditions do not entitle him to relief. Loughridge's facility does not appear to have a current COVID-19 outbreak, and any risk posed by his medical conditions is not beyond the ability of his facility to mitigate. Therefore, this claim for relief is without merit.

### B. Unusually Long Sentence

Loughridge argues various sentencing disparities entitle him to relief. More specifically, he contends sentencing disparities exist because (1) this Court considered methamphetamine purity when determining his Guidelines range, and (2) he would be considered a non-violent offender under current law. *See* Record Documents 179, 197, & 216.

---

[7] Although Loughridge briefly states he "appears to be experiencing long-COVID from a prior infection," Record Document 197 at 3, he provides no medical documentation suggesting that his symptoms are debilitating, the BOP's treatment is inadequate, or the BOP cannot mitigate any risks posed.

10

The Court construes these claims as seeking compassionate released based on an unusually long sentence. U.S.S.G. § 1B1.13(b)(6) provides:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).[8] Thus, to be eligible for relief under this category, a defendant must show that some change in the law has created a gross disparity between the sentence he received and the sentence he would receive if sentenced today.

### i. Methamphetamine Purity

To begin, Loughridge repeatedly argues he suffers from a sentencing disparity based on methamphetamine purity. His argument is two-fold. First, he maintains that he suffers from a disparity when compared to other defendants convicted of similar crimes, including his co-defendant Meija. *See* Record Documents 212, 215, 218, & 220. Second,

---

[8] In *United States v. Austin*, the Fifth Circuit held that a change in law explicitly made non-retroactive cannot constitute an extraordinary and compelling circumstance. *See* 125 F.4th 688, 692-93 (5th Cir. 2025). Additionally, the United States Supreme Court recently granted a writ of certiorari to decide whether a district court may consider disparities created by the First Step Act's prospective changes when determining if extraordinary and compelling reasons warrant compassionate release. *See Rutherford v. United States*, 145 S. Ct. 2776 (2025).

The Court omits a more nuanced discussion on the validity of this Guidelines provision. Out of an abundance of caution, the Court shall assume without deciding that a non-retroactive change in law can constitute an extraordinary and compelling circumstance. As will be discussed *infra*, even making this assumption on Loughridge's behalf, he still fails to demonstrate his entitlement to relief.

11

Loughridge argues he suffers from a sentencing disparity because some courts no longer consider the purity of methamphetamine when calculating a defendant's Guidelines range. *See* Record Documents 179, 181, 197, 212, 216, 218, & 220. Thus, Loughridge argues both that his sentence is unusually long compared to other defendants, including his co-defendants, and that his sentence is unusually long compared to what he would be sentenced today. Neither argument presents an extraordinary and compelling circumstance.

The Court begins with Loughridge's argument that his sentence is unusually long compared to others, including Meija. At the outset, the Court notes it expressly addressed the disparate classification of the methamphetamine purities for Meija and Loughridge during Loughridge's sentencing. *See* Record Document 165 at 2-4. Unlike Loughridge, Meija pled guilty to "a mixture and substance of methamphetamine" instead of actual methamphetamine. *Compare* Record Document 85-2 at 2 *with* 102-2 at 2. And, unlike with Meija, the DEA tested the purity of the methamphetamine attributable to Loughridge and determined it was actual methamphetamine. *See* Record Document 165 at 2-4. Finally, Meija's criminal history category was IV compared to Loughridge's VI. *Compare* Record Document 151 at 1 *with* 160 at 1. These important distinctions between their cases demonstrate that no sentencing disparity exists.

In any event, Loughridge's argument is not cognizable as an extraordinary and compelling circumstance. Loughridge argues a sentencing disparity exists between his sentence and others convicted of the same charge, but the Guidelines do not suggest relief is available for defendants who argue there is a disparity between their sentence

and other defendants convicted of crimes of the same type. Again, the Sentencing Commission's guidance provides that a change in law may be considered "*only* where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . . ." U.S.S.G. § 1B1.13(b)(6) (emphasis added). Therefore, the Court finds Loughridge has not demonstrated he is entitled to relief based on an unusually long sentence when compared to other defendants, and this § 3582(c)(1)(A) claim fails.[9]

Similarly without merit is Loughridge's argument that recent policy changes in various courts' treatment of methamphetamine purity would result in a lower sentence if he was sentenced today. Loughridge repeatedly argues that some states, including Louisiana, allegedly no longer consider the purity of a drug at sentencing. *See* Record Documents 181, 197, 212, 215, 216, & 218. This argument does not entitle him to relief for several reasons.

First, Loughridge's policy-based argument challenges this Court's application of the Guidelines at his sentencing, a type of argument that has been routinely disallowed under § 3582(c)(1)(A) by courts in this circuit. Section 3582(c)(1)(A) "is limited to sentence reductions based on extraordinary post-sentencing circumstances, not re-litigation of sentencing policy or arguments which could have been raised on direct appeal or in a § 2255 motion." *United States v. Hernandez*, No. 18-CR-20, 2025 WL 2637371, at *7 (E.D.

---

[9] Nor does this reason constitute an extraordinary or compelling "other reason[]." U.S.S.G. § 1B1.13(b)(5). That other defendants received a lesser sentence is not "similar in gravity" to the extraordinary and compelling circumstances that may be presented by the defendant's medical conditions, the defendant's age, the defendant's family circumstances, or the defendant's being a victim of abuse. *Id.*

Tex. Sept. 12, 2025). The type of policy argument raised here is an argument Loughridge could have raised at sentencing, and his "failure to make this argument at the proper time does not afford him the ability to make a substantive challenge in a motion for compassionate release." *Id.*; *see also United States v. Stewart*, No. 12-CR-257, 2024 WL 3277380, at *3 (W.D. La. July 1, 2024) ("Stewart is challenging the sentencing guidelines and how it distinguishes between different levels of methamphetamine purity. . . . Stewart's policy-based argument here falls within the province of a direct appeal of a § 2255 motion and should not be raised under . . . § 3582(c)(1)."), *appeal dismissed*, No. 24-30455, 2024 WL 5323487 (5th Cir. Aug. 27, 2024); *United States v. Ware*, No. 18-CR-43, 2025 WL 1235777, at *10 (E.D. Tex. Apr. 28, 2025) ("Ware maintains that his sentence was wrongly enhanced based on the finding that his offense involved methamphetamine (actual) rather than methamphetamine (mixture). . . . Ware's request fall[s] outside the scope of § 3582 . . . ."); *United States v. Williams*, No. 18-CR-37-1, 2025 WL 1020787, at *4 (S.D. Miss. Apr. 4, 2025) ("Sentencing is the more appropriate stage to consider such policy disagreements with the Guidelines, rather than on a motion for compassionate release."); *United States v. Olinde*, No. 3-CR-143, 2024 WL 2834452, at *2 (M.D. La. June 4, 2024). As such, this argument is not cognizable under § 3582(c)(1)(A).

Second, even assuming this type of argument is cognizable under § 3582(c)(1)(A), Loughridge has not demonstrated a change in *law*. The cases relied upon by Loughridge are not binding on this Court because they are all decisions by federal district court judges and/or are decisions from other circuits. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7

(2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). While other courts may have "implemented a policy to treat actual methamphetamine cases and mixture methamphetamine cases the same," this Court had no precedential obligation "to adopt this policy as other courts have." *United States v. Ingram*, No. 17-CR-41-1, 2024 WL 697089, at *2 (E.D. Tex. Jan. 29, 2024), *report and recommendation adopted*, No. 17-CR-41-1, 2024 WL 692711 (E.D. Tex. Feb. 16, 2024). Other than citing these policy-based decisions, Loughridge has identified no change in the law or the Guidelines that alters the treatment of methamphetamine purity. Indeed, "[t]he Sentencing Commission . . . has convened on multiple occasions since this issue was first raised and has declined to make any changes to the Guidelines regarding methamphetamine and methamphetamine (actual)." *United States v. Lourde*, No. 18-CR-80-1, 2025 WL 1483451, at *5 (E.D. Tex. May 21, 2025). Therefore, Loughridge has failed to demonstrate that a change in law has resulted in him having an unusually long sentence.

Finally, "numerous courts within this circuit have rejected the argument that the Guideline's methamphetamine purity distinction constitutes an extraordinary and compelling reason for a sentence reduction." *Ware*, 2025 WL 1235777, at *10 (collecting cases). "[T]he guidelines distinction is not some extraordinarily severe exigency, was not unforeseeable when [Loughridge] was sentenced,[10] and is not something unique to

---

[10] At Loughridge's change of plea hearing, the Court informed Loughridge that he would be found responsible for a kilogram of actual methamphetamine, and Loughridge affirmed his understanding. *See* Record Document 164 at 13-14.

15

[Loughridge]." *Stewart*, 2024 WL 3277380, at *3. As such, the distinction between actual methamphetamine and a mixture of methamphetamine in the Guidelines "does not present an extraordinary and compelling reason for relief." *Id.*

In sum, Loughridge's argument that he suffers from a sentencing disparity because of policy changes in the treatment of methamphetamine purity fails to establish an extraordinary and compelling circumstance. This type of claim is not cognizable under § 3582(c)(1)(A). Further, the policy differences of various courts in their treatment of methamphetamine purity are neither a change in law nor an extraordinary and compelling circumstance. Therefore, the Court finds Loughridge has not demonstrated he is entitled to relief based on an unusually long sentence resulting from policy changes in the courts' treatment of methamphetamine purity, and this § 3582(c)(1)(A) claim fails.[11]

### ii. First Step Act's Amendments to Safety Valve

Loughridge argues the Court should reduce his sentence because it has "the power and authority to use the First Step Act for non-violent offenders." Record Document 179 at 1. Although not expressly articulated by Loughridge, the relevant change in law appears to be the First Step Act's changes to 18 U.S.C. § 3553(f).

"The safety-valve provision, 18 U.S.C. § 3553(f), offers some defendants convicted of drug offenses an escape from otherwise applicable mandatory minimums." *Pulsifer v.*

---

[11] Nor does this reason constitute an extraordinary or compelling "other reason[]". U.S.S.G. § 1B1.13(b)(5). That some courts have adopted different policies regarding methamphetamine purity is not "similar in gravity" to the extraordinary and compelling circumstances that may be presented by the defendant's medical conditions, the defendant's age, the defendant's family circumstances, or the defendant's being a victim of abuse. *Id.*

*United States*, 601 U.S. 124, 128 (2024). "Under the provision, a court is to sentence a defendant 'without regard to any statutory minimum' if it finds that five criteria are met." *Id.* (citing 18 U.S.C. § 3553(f)). The First Step Act greatly expanded the applicability of the safety valve provision by relaxing the criminal history requirement to "mak[e] it easier for a defendant to meet." *Pulsifer*, 601 U.S. at 128; *see also* First Step Act of 2018, PL 115-391, § 402(a)(1)(B), 132 Stat 5194, 5221. Under current law, a defendant is eligible so long as he does not have: "(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense . . . ; (B) a prior 3-point offense . . . ; and (C) a prior 2-point violent offense . . . ." 18 U.S.C. § 3553(f)(1). This amendment was not retroactive. *See* First Step Act of 2018, PL 115-391, § 402(b), 132 Stat at 5221.

Loughridge seemingly argues he suffers from a sentencing disparity because he would have been eligible for relief under the safety valve if sentenced today. *See* Record Document 179 at 1. At the outset, the Court notes Loughridge's Guidelines range of 235 to 293 months *exceeded* the statutory minimum of ten years (120 months) by several years. The Court selected its bottom of the Guidelines sentence after considering the 18 U.S.C. § 3553(a) factors pertaining to Loughridge's "extensive criminal history, personal characteristics, drug use, relative culpability . . . , [and] role in [the] conspiracy." Record Document 151 at 4. Based on those factors, the Court would not have departed downward from the Guidelines and selected a sentence lower than the statutory minimum. Thus, Loughridge's reliance on the changes to the safety valve provision is misplaced.

In any event, Loughridge remains ineligible for safety valve relief even under current law. The "eligibility checklist" set forth in 18 U.S.C. § 3553(f)(1) "demands that a defendant satisfy every one of its conditions." *Pulsifer*, 601 U.S. at 132. Here, Loughridge has "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense" and has received "a prior 3-point offense." 18 U.S.C. § 3553(f)(1)(A)-(B); Record Document 140 ¶¶ 34-35, 40, 42-45. As such, even assuming Loughridge does not have a "prior two-point violent offense," 18 U.S.C. § 3553(f)(1)(C), Loughridge would be ineligible for relief under the safety valve. *See Pulsifer*, 601 U.S. at 153 ("Because Pulsifer has two prior three-point offenses totaling six points, he is not eligible. It makes no difference that he does not also have a prior two-point violent offense."). Additionally, Loughridge is ineligible for relief under the safety valve provision because the Court found him to be a supervisor of others. *See* Record Document 148 at 1. This finding precludes eligibility. *See* 18 U.S.C. § 3553(f)(4); *United States v. Villa*, No. 12-CR-320, 2025 WL 746518, at *3 (N.D. Tex. Mar. 7, 2025) ("Villa is still not qualified for § 3553(f)'s safety valve even after the [First Step Act's] amendments . . . because she was found to be an 'organizer, leader, manage[r], or supervisor . . . .'").

Therefore, Loughridge is unable to show "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," U.S.S.G. § 1B1.13(b)(6), and this basis for relief is without merit.

### C. Victim of Abuse

Loughridge argues he was sexually abused by a BOP officer and is consequently entitled to a sentence reduction. *See* Record Document 210. The Guidelines provide that

18

extraordinary and compelling circumstances are present for victims of abuse under the following circumstances:

> (4) Victim of Abuse.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
>> (A) sexual abuse involving a "sexual act" . . .
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(b)(4).

Although the Court recognizes and empathizes with the difficulties alluded to by Loughridge, he has not met his burden of showing he is entitled to relief. Loughridge has not shown that any misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." U.S.S.G. § 1B1.13(b)(4). While this requirement may be excused, Loughridge has not made the requisite showings. Thus, Loughridge has not demonstrated he is entitled to relief on this basis, and this claim under § 3582(c)(1)(A) fails.

### D. Rehabilitation

Loughridge seems to argue his rehabilitation entitles him to compassionate release. *See* Record Documents 177, 197, & 216. Rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). But "rehabilitation of the defendant is not, by itself, an extraordinary and compelling

reason. . . ." *Id.* The Court commends Loughridge on his rehabilitative efforts. However, because Loughridge fails to demonstrate the existence of other extraordinary and compelling reasons warranting relief, the Court is prohibited from considering rehabilitation alone.

### Conclusion

Having considered Loughridge's motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) [Record Documents 177, 197, & 216], Loughridge's supplemental responses [Record Documents 179, 181, 210, 212, 215, 218, 220, 221, & 224], Loughridge's proffered records [Record Document 198], the Government's oppositions [Record Documents 180 & 219], and applicable policy statements, **IT IS ORDERED** that Loughridge's motions for compassionate release [Record Documents 177, 197, & 216] are **DENIED**.

**IT IS FURTHER ORDERED** that Loughridge's motion to expand the record [Record Document 198] is **GRANTED**. The requested documents have been made part of the record, and the Court considered them when reviewing Loughridge's request for compassionate release. No further relief is necessary.

**THUS DONE AND SIGNED** this 29th day of December, 2025.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE